IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:12-CV-68-FL

| | |
|---|---|
| VIGINIA C. SPEIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon the parties' Motions for Judgment on the Pleadings. (DE's-18 & 20). The time for filing any responses or replies has expired, and, therefore, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-18) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-20) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for supplemental security income on October 27, 2009 alleging disability beginning March 21, 2004. (Tr. 12). Her claim was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge ("ALJ") who determined that Plaintiff was not disabled in a decision dated January 3, 2011. *Id*. at 12-22. The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review on

February 22, 2012, rendering the ALJ's determination as Defendant's final decision. *Id.* at 5-11. Plaintiff filed the instant action on April 24, 2012. (DE-6).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which

establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. ' 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. ' 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. ' 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. ' 404.1520(e); 20 C.F.R. ' 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. ' 404.1520(f).
>
> Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

The ALJ followed the sequential evaluation in this case. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 27, 2009. *Id*. at 14. At step two, the ALJ found that Plaintiff had the following severe impairments: 1) degenerative disc disease; 2) post-back surgery residuals; 3) asthma; and 4) depression. *Id*. However, the ALJ determined that Plaintiff did not have an impairment that met or medically equaled one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 14-16. Next, the ALJ determined that Plaintiff had the residual functional capacity to perform a limited range of sedentary work. *Id*. at 16. Specifically, the ALJ found that Plaintiff had:

> the residual functional capacity to perform sedentary work . . . except [she] is limited to only occasionally climbing stairs, ladders and balancing; only occasionally bending, climbing, crawling, crouching, kneeling, stooping, pushing and pulling. Further [she] should avoid extreme heat, cold, moisture, and hazardous machinery. In addition, [she] would be limited to simple routine repetitive tasks.
>
> *Id*. at 16.

Next, the ALJ determined that Plaintiff was unable to perform her past relevant work. *Id*. at 20. However, based on the testimony of a vocational expert, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id*. at 20-21. Accordingly, the ALJ determined that Plaintiff had not been under a disability during the relevant time period. *Id*. at 21-22.

The ALJ's findings were accompanied by a thorough review and assessment of the entire record. This "assessment . . . provides a backdrop for the ALJ's evaluation[s] . . . and provides insight into [them]." Worden v. Astrue, 2012 WL 2919923, *5 (E.D.N.C. May 29, 2012), *Report and Recommendation Adopted by*, Worden v. Astrue, 2012 WL 2920289. Moreover, the undersigned has reviewed the entire record and finds that the ALJ's determinations were supported by substantial evidence.

Plaintiff's assignments of error rely on the contention that the ALJ incorrectly weighed the evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, her claims are without merit. Nonetheless, the undersigned shall now address Plaintiff's assignments of error in turn.

**Substantial evidence supports the ALJ's findings with regard to Listing 1.04**

Plaintiff argues that the ALJ erred by determining that Plaintiff did not meet Disability Listing 1.04. (DE-19, pg. 9). Listing 1.04 states:

> ***Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

4

  A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

  OR

  B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

  or

  C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

  20 CFR Part 404, Subpart P, Appendix 1.

  The ALJ specifically considered Listing 1.04 and ultimately found that Plaintiff did not meet its requirements. (Tr. 15). This finding was supported by substantial evidence.

  For example, Plaintiff demonstrated: 1) no focal deficits; and 2) normal reflexes, coordination, muscle strength and tone. *Id*. at 128, 182, 198, 210, 218. Similarly, during some examinations Plaintiff's straight leg raising was negative. *Id*. at 123, 353, 367, 368, 377. She also demonstrated normal posture and gait. *Id*. at 134, 218, 368. Likewise, Plaintiff often denied weakness. *Id*. at 145, 151, 171, 175, 223, 245. Furthermore, Plaintiff demonstrated full range of motion. *Id*. at 218, 242, 292. Finally, during some examinations Plaintiff did not complain of pain. *Id.* at 132, 228.

  A November 30, 2005 CT of Plaintiff's lumbar spine revealed mild to moderate degenerative changes without significant stenosis or focal disc herniation. *Id*. at 361. On January 30, 2007, a MRI of Plaintiff's lumbar spine revealed no foraminal stenosis at L4-L5. *Id*.

5

at 351. Mild disc bulges were found at L3-L4 and L4-L5. *Id*. A February 20, 2006 myelogram showed mild to moderate degenerative changes with no definitive disc herniation. *Id*. at 357-358.

Dr. Kurt Voos stated on February 5, 2007 that Plaintiff was "neurologically intact." *Id*. at 350. On April 25, 2007, Dr. Voos examined Plaintiff and stated that he did "not see anything operative." *Id*. at 347. He recommended further physical therapy. *Id*.

During a November 24, 2008 examination it was noted that Plaintiff's "[r]ange of motion of the lumbar spine is maintained with no significant pain in extremes of motion." *Id*. at 120.

On March 2, 2009 it was noted that Plaintiff was responding to outpatient therapy "reasonably well." *Id*. at 116.

A November 25, 2009 CT of Plaintiff's lumbar spine revealed: 1) alignment within normal limits; 2) no stenosis, nerve root sleeve amputation or significant epidural defect; and 3) no evidence of instability. *Id*. at 260.

During a February 2, 2010 examination, Plaintiff was able to "ambulate, sit, and lay supine and get back up without assistance . . ." *Id*. at 280. Her back had normal curvature and normal range of motion. *Id*. at 281.

Plaintiff stated on February 17, 2010 that she felt "much better overall." *Id*. at 132.

Dr. K.F. Woods assessed Plaintiff's RFC on February 23, 2010. *Id*. at 284-291. It was determined that Plaintiff could: 1) occasionally lift and/or carry 20 pounds; 2) frequently lift and/or carry 10 pounds; and 3) stand, walk and/or sit about six hours in an eight hour workday. *Id*. at 285. Several postural limitations, such as limiting Plaintiff's climbing, balancing and stooping, were noted. *Id*. at 286. It was also noted that Plaintiff's reaching in all directions, including overhead, was limited. *Id*. at 287. No visual or communicative limitations were noted.

*Id*. at 287-288. Finally, Dr. Woods stated that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. because of her history of asthma. *Id*. at 288. Dr. Robert Pyle made similar findings on May 11, 2010. *Id*. at 293-300.

On March 22, 2010, Plaintiff's range of motion in both her upper and lower extremities was within normal limits. *Id*. at 292. She also had normal muscle tone. *Id*. at 292A.

During a May 7, 2010 examination, Plaintiff was "feeling much better" and had increased exercise tolerance. *Id*. at 341. She had no myalgias, neck pain or back pain during this examination. *Id*. at 342.

Plaintiff had full muscle strength throughout on October 4, 2010. *Id*. at 326.

In short, the ALJ's findings with regard to Listing 1.04 were supported by substantial evidence, and this assignment of error is without merit.

**The ALJ properly evaluated the opinion of Dr. Tober**

Plaintiff argues that the ALJ improperly evaluated the opinion of Dr. Susan Tober. (DE-19, pg. 11-12). On June 30, 2010, Dr. Tober completed a form checklist. *Id*. at 484. On this checklist, Dr. Tober indicated that Plaintiff had: 1) neuro-anatomic distribution of pain; 2) limitation of the spine; 3) positive straight leg raising test; 4) the need to change position more than once every two hours; and 5) an inability to ambulate effectively. *Id*. In addition, Dr. Tober opined that Plaintiff: 1) suffered from severe pain; 2) could only stand or sit for 15 minutes at one time; 3) could never lift any weight; and 4) could never bend or stoop. *Id*. Ultimately, Dr. Tober concluded that Plaintiff was incapable of performing any work for any amount of time during the day. *Id*.

The ALJ gave "little weight" to the opinion of Dr. Tober. *Id*. at 19. Specifically, the ALJ determined that Dr. Tober "found the claimant's symptomologies to be far more disabling than

7

the record evidence shows." *Id*. at 19.  This finding was preceded by a thorough summary of the entire medical record and was supported by substantial evidence.  Much of this evidence has already been summarized, *supra*.  In addition, on January 28, 2008, it was noted that Plaintiff's ability to perform her activities of daily living was "better with medication."  *Id*. at 252.  Likewise, Plaintiff stated that she was "happy" wither her current regimen of pain relievers and she demonstrated no signs of acute pain.  *Id*.

Dr. Tober examined Plaintiff prior to completing the form checklist.  *Id*. at 331-334.  During this examination, Plaintiff had "no active complaints", and was generally "doing well."  *Id*. at 332.  Contrary to Dr. Tober's finding, Plaintiff stated she could lift up to five pounds.  *Id*. at 333.  Plaintiff also stated that her medications were "helping" her pain.  *Id*. at 334.

It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein.  Wireman v. Barnhart, 2006 WL 2565245, * 8 (W.D.Va. September 5, 2006)(unpublished opinion)(internal citations omitted).  Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." *Id*. (internal citations omitted).  While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling  weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).  Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro,  270 F.3d at 178.  Thus, "[b]y negative implication, if a

8

physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 1999 WL 7864, * 2 (4th Cir. 1999) (unpublished opinion)(internal citations omitted).

When the ALJ does not give the opinion of a treating physician controlling weight, he must weigh the opinion pursuant to the following non-exclusive list: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship between the physician and the claimant; 3) the supportability of the physician's opinion; 4) the consistency of the opinion with the record; and 5) whether the physician is a specialist. 20 C.F.R. § 404.1527(d)(2)-(6). *See also*, Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96–2p, 1996 WL 374188, at *5. *See also*, Farrior v. Astrue, 2011 WL 3157173, * 4 (E.D.N.C. June 1, 2011).

In his decision, the ALJ fully explained his reasoning in weighing the medical evidence. These reasons were supported by substantial evidence and, therefore, this assignment of error is without merit.

**The ALJ properly evaluated Plaintiff's left shoulder pain, edema, and plantar fasciitis**

Finally, Plaintiff argues that the ALJ erred when he determined that Plaintiff's left

9

Case 4:12-cv-00068-FL   Document 22   Filed 03/14/13   Page 9 of 11

shoulder pain, edema, and plantar fasciitis were not severe impairments. The undersigned reiterates that the ALJ's findings were accompanied by a summary of the entire record and were supported by substantial evidence . Likewise, the undersigned also reiterates that much of this evidence has already been summarized. Nonetheless, the undersigned shall briefly address any additional relevant evidence.

With regard to Plaintiff's shoulder pain, on December 10, 2008 it was noted that this condition "seem[ed] better." *Id*. at 231. On January 14, 2009 it was noted that a MRI showed "mild" bursitis. *Id*. at 225. No treatment was provided, because Plaintiff stated that her shoulder pain was improving. *Id*. On March 22, 2010, Plaintiff's upper extremity range of motion was "[w]ithin normal limits." *Id*. at 292.

In addition, the record often noted that Plaintiff had mild or no swelling. *Id*. at 125-137, 215-220, 238-247, 328-329. Plaintiff's edema was improved with Lasix, and was described as "minimal." *Id*. at 125-137, 168-178, 195-206, 426-444, 458-476. On June 16, 2010, Plaintiff's edema was described as "mild" and "stable." *Id*. at 333.

Finally, on April 3, 2009 it was noted that Plaintiff had moderately severe plantar fasciitis. *Id*. at 270. Plaintiff complained of foot pain and was referred to a podiatrist. *Id*. at 221-226. Thus, the ALJ's statement that "there is no evidence of record that the claimant had any surgical procedure or takes any medication for [her plantar fasciitis]" accurately reflects the record. Moreover, there was insufficient evidence for Plaintiff to meet her burden at step two of establishing this condition as a severe impairment. *See*, Pendley v. Astrue, 2013 WL 819337, * 5 (March 6, 2013)("Plaintiff, who carries the burden through Step 4, has failed to show objective medical evidence that a condition . . . caused more than a minimal effect on his ability to function."). Accordingly, this assignment of error is without merit.

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-18) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-20) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Wednesday, March 13, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE